**The People for the use, &c., v. George Rix and Others.**

Though the law presumes a ministerial officer to *know the law*, it makes no such presumption, in ordinary cases, as to matters of *fact*, of which the *law* gives *no information*, and which are not disclosed by the process or order which he is commanded to obey. And where the jurisdiction of the subject-matter, in the tribunal issuing process, depends upon matter of fact, the existence of which can not be determined from the law, and which is not of public notoriety, the ministerial officer will not be held bound to ascertain it at his peril, unless the law has clearly given him the right to demand the information, and to determine the fact.

Where, therefore, the statute conferred jurisdiction of certain proceedings only, as was claimed, upon the circuit court commissioner of the county holding the senior commission, and did not provide a period when the term of either should commence, or what should be the date of the respective commissions, but the governor might appoint, and issue commissions, at any time; and no provision was made for making public the fact of the priority of either, or by which it could be ascertained in any county office, and no power given to the sheriff to demand inspection of the commissions, or to require the information from the proper state office; — *Held*, That the sheriff who had obeyed process issued in such proceedings by the commissioner who, *in fact*, held the junior commission (though the sheriff was not shown to have known that fact), and delivered up, in pursuance of such process, property which he had attached, was not liable on his official bond for so doing.

*Heard November 19th and 20th. Decided December 9th.*

Case reserved from Kalamazoo Circuit.

The action was debt, brought upon the official bond of Rix, as sheriff of Kalamazoo county, for the use and benefit of the President, Directors, and Company of the Michigan State Bank. Upon the trial, the following facts were agreed upon between the parties.

That defendant Rix was, at the times mentioned in the declaration, sheriff of said county, and, as such, with the other

defendants as his sureties, executed and delivered the bond declared upon, conditioned that he should well and faithfully in all things perform the duties, and execute the office, of sheriff aforesaid.

That on the 13th day of February, A. D. 1852, a writ of attachment was issued out of the Circuit Court for Kalamazoo county, at the suit of the President, Directors and Company of the Michigan State Bank, against one Mumford Eldred, Jr. directed to said Rix, then sheriff; that by virtue of said writ, said sheriff seized goods and chattels to the value of $5177.80; that the defendant not being found, so that personal service could be made of said writ, notice of the attachment was published as required by statute, and judgment taken by default on such publication April 9th, 1856, for $3970.19 damages and costs; that on the 30th of April, 1856, execution was issued on said judgment to the then sheriff of said county, commanding him, under the statute, to make the amount of said judgment from the goods and chattels so taken under said attachment; to which the then sheriff returned that the said goods and chattels were not then, and never had been, in his possession, and had never been delivered to him, and that he was unable to find the same or any part thereof in his county; that he had demanded the same of said Rix, whose next successor in office he was, and said Rix had refused, denying possession thereof; whereupon said execution was returned wholly unsatisfied.

It was further agreed that on the 26th day of February, 1852, proceedings were instituted before N. A. Balch, then a circuit court commissioner for the county of Kalamazoo, by said Eldred, for a dissolution of said attachment, and a summons issued by said commissioner, but not served on the plaintiffs; that the parties respectively, by their respective attorneys, appeared before said commissioner March 4th, 1852, and plaintiffs' attorneys obtained a continuance of the proceedings to the 10th of the same month, when they again appeared, and the plaintiffs, by their attorneys, verbally objecting to the

jurisdiction, the defendant proceeded with his proofs; upon closing which, the plaintiffs in attachment introduced George D. Rice, who testified that he was then an acting circuit court commissioner for said county, and produced his commission, which was objected to by defendant, and the objection sustained; whereupon said Balch made an order that such attachment be dissolved, and that the sheriff restore to the defendant the goods and chattels taken by virtue thereof; which order the sheriff obeyed.

It was further agreed that said Rice was, during all the said proceedings before Balch, the circuit court commissioner for said county who held the oldest commission, and that Balch was the junior commissioner; that the defendant Rix, then sheriff as aforesaid, was notified and warned by the said plaintiffs not to deliver up said goods and chattels under said order, and that Balch had no jurisdiction to make the same; and indemnity was tendered him to retain the said goods and chattels.

Upon the facts so agreed upon, the circuit judge reserved, for the opinion of this court, the following questions:

*First,* Whether said Balch, as circuit commissioner (there being another commissioner holding an older commission) had any authority to hear, try, and determine the said application to dissolve said attachment, and whether his judgment and determination was valid, or null and void.

*Second,* Whether, though said Balch had no jurisdiction, the sheriff was not protected by the order of said Balch in restoring and delivering the property attached, to the defendant in the attachment.

*Third,* Whether all proceedings in such attachment suit subsequent to the order of Balch, were not irregular and void until such order was legally set aside and vacated.

*S. D. Miller,* and *C. I. Walker,* for plaintiffs:

1. The power to dissolve attachments, under the law of 1851, accrued to, and could only be exercised by, the com-

missioner who held the older commission. — *Chandler v. El-dred, decided January term* 1853 (*not reported*).

The proceeding before Balch was without authority, also, because the writ of attachment had not been " served under the provisions of law " when the application was made to him. The service upon defendant was an essential part of the service of the writ. — *Peck v. Warren*, 8 *Pick.* 163; *Wright v. Oakley*, 5 *Metc.* 400; *Sanford v. Dick*, 17 *Conn.* 213; *Hodge v. Swasey*, 30 *Me.* 162; *Blanchard v. Day*, 31 *Me.* 494.

2. Where an officer is vested with a power which he is authorized to exercise only on the happening of some contingency, or the performance of some condition, both he, and all claiming under his acts, must show the facts which authorize him to act. — *Brodhead v. McConnell*, 3 *Barb.* 175; *Smith v. Shaw*, 12 *Johns.* 257; *Cable v. Cooper*, 15 *Johns.* 152; *Wise v. Withers*, 3 *Cranch*, 331; *Paine v. Ely*, 1 *Chip.* 37; *Allen v. Gray*, 11 *Conn.* 96; *Grumon v. Raymond*, 1 *Conn.* 40; *Ford v. Babcock*, 1 *Denio*, 158. And where a *quasi* judicial officer, of limited and inferior power, has not jurisdiction of the subject-matter upon which he assumes to act, and it does not fall within the general scope of his office, his order can not protect a ministerial officer, warned and notified of the want of jurisdiction. Nor will the order protect if that jurisdiction can only be gained upon the happening of a certain· contingency, which, in the particular instance, has not occurred.

The act of 1850, instead of granting to both commissioners equally the exercise of the same authority, provided that in certain cases the commissioner who held the oldest commission should alone have power to act. The junior commissioner was rendered a *subordinate officer;* his authority was limited to a particular class of duties, while the senior commissioner was vested with the general power previously attached to the office. The office of commissioner has no authority strictly judicial, except where directly conferred by statute. The junior commissioner was, therefore, at most, only a *quasi* judicial

officer, of limited and inferior jurisdiction. The subject-matter upon which he acted in this case was not within the general scope of his office.

A broad distinction ought, in reason and equity, to exist between those cases where an officer innocently and ignorantly, in good faith, obeys a command given with apparent sanction, and those in which he, after full warning of want of power, deliberately carries out the precept. The question of liability has been made to turn, in some cases, upon this distinction. —*Barnes v. Barber*, 1 *Gilm.* 401; *McDonald v. Willkie*, 13 *Ill.* 25; *Tefft v. Ashbaugh, Ibid.* 603.

It is "process regular on its face" that protects the officer; that is to say, a judicial writ issued under the seal of a court, and bearing upon its face the *indicia* of judicial authority. — *Boal's lessee v. King*, 6 *Ohio*, 2. And a bare order from a person clothed with functions partly ministerial and partly judicial — the latter only to be exercised under certain circumstances, and upon certain conditions — is not "process" upon which the person to whom it is directed may rely without question. If it were so, there would be no end to ministerial protection.

*S. T. Douglass*, for defendants:

1. Balch, as circuit court commissioner, had jurisdiction to dissolve the attachment, though Rice had the older commission.

2. But even if he had not, the sheriff was justified in obeying his order.

Where the want of jurisdiction in the particular case arises from some fact or circumstance which the officer is not bound to know, because the law has provided no means for bringing it to his knowledge before being called upon to act, he is not responsible. — *Pike v. Carter*, 3 *Bing.* 78; *Calder v. Halkett*, 3 *Moore P. C.* 77; *Clarke v. May*, 2 *Gray*, 412, *per Bigelow J.*

A ministerial officer is not liable for any act done in

THE PEOPLE *v.* RIX.

the proper execution of process issued by any court or magistrate without jurisdiction, except where the want of jurisdiction appears upon the face of the process; that is, where, looking alone at the law, which he is bound to know, and at the process, which he is required to execute, the want of jurisdiction is apparent. — 1 *Smith Lead. Ca.* (*last ed.*) 845, 846; 1 *Q. B.* 2, 16, 18, 29; 3 *M. & W.* 418; 7 *Eng. L. & Eq.* 470, 472, 473; 5 *Wend.* 170; 16 *Wend.* 514 *to* 519; 5 *Hill,* 440; 1 *Sel.* 380 *to* 382; 13 *Mass.* 288; 1 *Gray,* 71; 2 *Gray,* 410, 413; 10 *Fos.* 318; 12 *Vt.* 661, 666; 1 *Gilm.* 406; 13 *Ill.* 25; 3 *Ill.* 602; 7 *Blackf.* 270; 2 *Fla.* 171; 12 *S. & M.* 533; 1 *Fos.* 279; 4 *Mich.* 291.

It is submitted that this case, and all others of like nature, fall clearly within the reason of the cases above referred to, and also of those in which even a magistrate is not liable for excess of jurisdiction. — See also 4 *B. Monr.* 230; 2 *J. J. Marsh.* 44; 9 *B. Monr.* 390; 1 *Rawle,* 143; 7 *Johns.* 549; 20 *Wend.* 236; 16 *Me.* 132, 135; 13 *Me.* 363.

It is of no consequence that the sheriff was notified by the plaintiffs that Balch had no jurisdiction. — 16 *Me.* 132; 1 *Mo. & R.* 531; 1 *Fos.* 279; 20 *Wend.* 236; 5 *Hill,* 440; 7 *Blackf.* 270.

CHRISTIANCY J.:

The view we have taken of the second question reserved for our opinion, renders it unnecessary to determine the first.

Whether Balch being the junior commissioner of the county, had or had not power to make the order for the dissolution of the attachment, we are all of opinion the sheriff can not be made liable, under the circumstances presented by the case, for obeying the order — he having acted in good faith.

It is true, as a general rule, that a sheriff or other ministerial officer can not justify under process issued by a

court or officer having no jurisdiction of the subject-matter. But this rule, we think, is based upon the ground that every man is bound to know the law; and the subject-matter in reference to which the question of jurisdiction arises, can generally be decided by reference to the statute or other public law, itself, without an inquiry into matters of fact which the law does not disclose.

Thus, if a justice of the peace issued a writ of restitution in forcible entry, or of possession in ejectment, or a warrant of commitment to the state prison on a conviction for murder, such writ or warrant would be no protection to the officer, however regular upon its face, because he is presumed to know, and can easily ascertain from the law itself, that the justice has no jurisdiction of the subject-matter, viz., the forcible entry, the ejectment, or the conviction for murder. No fact beyond that which the law itself discloses is necessary to decide the question, because no fact extrinsic the law could give the jurisdiction.

Thus far the principle is clear; and, in ordinary cases, as just as it is clear. But it may well be doubted (though upon this we give no opinion) whether even this principle has not sometimes been carried too far. Thus, it not unfrequently happens when the question is purely one of law, that it is a question of the greatest doubt and difficulty, upon which the ablest lawyers and the highest courts may differ — where, in fact, the law can not be known until decided by the court of last resort. In such cases, the presumption that the ministerial officer knows the law is an extremely violent one; and the rule which requires him to decide at once, and at his own peril, compelling him to respond in ruinous damages, whichever way he may decide, if his decision happen to be wrong, is certainly a rule of great harshness, and difficult to be reconciled with any principle of justice or common sense. And it may well be suggested whether it would not be more consonant to sound

public policy, in such cases, to hold the officer justified in obeying the process when acting in good faith, and let the party injured seek his remedy against the party procuring the process, and (in proper cases) the officer issuing it. The case before us, if the facts were all well known to the officer, would still present the question as one of great difficulty; and whatever may be the presumption of law, neither the sheriff nor the learned counsel in this case, with a full knowledge of the facts, could, until judicially determined, have decided with any certainty whether this commissioner had or had not jurisdiction. But the present case does not fall within the rule above discussed; for though the law presumes the officer to *know* the *law*, it makes no such presumption in ordinary cases as to *matters* of *fact*, of which the *law* gives *no information*, and which are not disclosed by the process or order which he is commanded to obey. And where the jurisdiction of the subject-matter depends upon matter of fact, the existence or non-existence of which can not be determined from the law, and which is not of public notoriety, the ministerial officer ought not, we think, to be bound to ascertain it at his peril, unless the law has clearly given him the right to demand the information, and to determine the fact.

The statute under which the commissioner in this case purported to act (2 *Comp. L. pp.* 1275 and 1276) gave the circuit court commissioner of the county jurisdiction of the proceeding for the dissolution of the attachment, and to make the order in question. There were two circuit court commissioners; and, giving to the law of 1850 the construction claimed by the plaintiffs; viz., that only the commissioner holding the older commission could take jurisdiction of the matter in question; still the law did not determine which commissioner held the elder commission. Nor did it provide a period when the official term of either should commence, or what should be the date of the re-

spective commissions. The governor had the power to appoint; and though the length of the official term was fixed at four years from the time of appointment, the date of the commissions might vary a day, a month, or a year; or they might be of the same date. It was not, there-fore, a fact of public notoriety. No provision was made for rendering it public, nor by which it could be ascer-tained in the county clerk's, or any other county, office. No power is given to the sheriff to demand inspection of the commissions in the hands of the commissioners, nor to require it from the secretary of state. We think, therefore, as the law has given the sheriff no jurisdiction to deter-mine the question of fact, no power to demand the au-thentic information, he can not be bound to determine the fact at his peril; while, if none but the elder commissioner could act, the sheriff could not have refused obedience to the order in this case, except at the peril of being able to show that this commissioner held the junior commission.

Balch was a circuit court commissioner *de facto* and *de jure*. He had taken jurisdiction of these proceedings *colore officii;* and as to this, the sheriff might well recog-nize him as the commissioner *de facto*, at least. He was an officer of the court from which the attachment issued; and though his right, so far as regarded his own protec-tion, might depend upon the prior date of his commission, we can not think this was a fact of which the sheriff was bound to take notice, or which he could assume to decide except at his own peril. Knowing him to be a commis-sioner, and an officer of the court, he had a right to rely upon the presumption that he had not violated his official duty in this proceeding.

We can see little better reason for holding the sheriff bound to know this fact or to determine it, than to know or determine the question, whether the judge of the circuit court, whose process he executes, was duly elected or quali-fied, or whether the certificate of his election is in due form.

THE PEOPLE v. RIX.

As a question of public policy, it might be mischievous in the extreme to allow, and much more to require, a ministerial officer to sit in judgment upon the rights of judicial officers *de facto*, whose process or orders he is called upon to obey, and to determine the validity of the title by which they assume to act. The law has provided other tribunals for the determination of such questions. It is therefore very questionable whether the sheriff would have been justified in disobeying the order in this case, if the commissions of the respective commissioners had been laid before him. But upon this we give no opinion, as it is not involved in the case. It does not appear that the sheriff had ever seen, or knew the date of, either commission, nor even that he had received any notice who held the older commission.

It would be difficult, if not impossible, to reconcile all the various decisions that have been made upon this class of questions. Many of them have been carefully examined. But we have thought it best to place the decision in this cause upon a plain and intelligible principle, which, we think, lies at the basis, and constitutes the reason, of most of them, and perhaps all of them which rest upon any sound principle.

As the view we have taken of the second point exonerates the sheriff and his bail from all liability upon the facts as presented in the case, the third question upon which our opinion is asked becomes entirely abstract, and, like the first, unnecessary to the decision of the case: we therefore express no opinion upon it.

It must be certified to the Circuit Court for the county of Kalamazoo, as the opinion of this court, that the sheriff is not liable for having obeyed the order dissolving the attachment, and that he was protected by that order in delivering the property attached to the defendant.

MARTIN Ch. J. and MANNING J. concurred. CAMPBELL J. did not sit in this case, having been counsel for one of the parties.